ORSUS GATE LLP
Denis Shmidt (State Bar No. 267987)
Nabil Bisharat (State Bar No. 270305)
Jennifer Haidar (State Bar No. 337558)
16 N. Marengo Ave., Suite 316
Pasadena, California 91101
Telephone:  (415) 326-3558
DShmidt@OrsusGate.com
NBisharat@OrsusGate.com
JHaidar@OrsusGate.com

HARDER LLP
Ryan J. Stonerock (State Bar No. 247132)
Dilan A. Esper (State Bar No. 178293)
Henry L. Self III (State Bar No. 223153)
8383 Wilshire Blvd., Suite 526
Beverly Hills, California 90211
Telephone:  (424) 203-1600
Facsimile:    (424) 203-1601
RStonerock@HarderLLP.com
DEsper@HarderLLP.com
HSelf@HarderLLP.com

Attorneys for Defendant and Counterclaimant
Yida Gao and Defendants Sand Hill Advisors
PR LLC and Shima Capital Management LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM STRUCK, individually and doing business as STRUCK CAPITAL, and STRUCK CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>vs. | Case No. 3:23-mc-80038<br><br>Central District Case No. 2:22-cv-02415-SPG-MAA<br><br>**NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENA TO PAUL VERADITTAKIT;** |

| | |
|---|---|
| 1  YIDA GAO, an individual, SAND HILL ADVISORS PR LLC, a Puerto Rican Limited Liability Company, SHIMA CAPITAL MANAGEMENT LLC, a Puerto Rican limited liability company, and Does 1-50,<br><br>Defendants, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>**EVIDENTIARY DECLARATIONS FILED SEPARATELY**<br><br>Hearing Date: To Be Set<br>Time: To Be Set<br>Courtroom: To Be Set<br>Judge: To Be Set |
| YIDA GAO, an individual;<br><br>Counterclaimant,<br><br>vs.<br><br>ADAM STRUCK, individually and doing business as STRUCK CAPITAL, STRUCK CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company, STRUCK CAPITAL FUND GP LLC, A Delaware Limited Liability Company, STRUCK CAPITAL FUND II GP, LLC, a Delaware Limited Liability Company, and ROES 1-50, inclusive<br><br>Counter-Respondents. | |

2
NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD

2      PLEASE TAKE NOTICE that pursuant to Federal Rules of Civil Procedure, Rule 45(f), Yida Gao, Sand Hill Advisors PR LLC, and Shima Capital Management LLC (collectively, "Defendants") move for a protective order precluding further enforcement of the subpoena served on Paul Veradittakit by Adam Struck and Struck Capital Management LLC ("Struck" or "Plaintiffs") in connection with a litigation pending in the Central District of California, captioned *Struck v. Goa*, Case No. 2:22-cv-02415-SPG-MAA (C.D. Cal) (the "Central District Action").

    This Motion will be based on this Notice of Motion and Motion, supporting declarations, and all materials that the Court may properly consider.

DATED: February 14, 2023        HARDER LLP

By: */s/ Ryan J. Stonerock*
    RYAN J. STONEROCK
Attorneys for Defendant and Counterclaimant Yida Gao and Defendants Sand Hill Advisors PR LLC and Shima Capital Management LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. NATURE AND STAGE OF PROCEEDINGS

This discovery motion filed by Defendant and Counterclaimant Yida Gao and Defendants Sand Hill Advisors PR LLC and Shima Capital Management LLC ("Shima") (collectively, "Defendants"), concerns a document subpoena served by Adam Struck and Struck Capital Management LLC ("Struck" or "Plaintiffs") (collectively, with Defendants, the "Parties") in connection with a litigation pending in the Central District of California, captioned *Struck v. Goa*, Case No. 2:22-cv-02415-SPG-MAA (C.D. Cal) (the "Central District Action"). As will be explained in a separately filed Motion to Transfer Pursuant to Rule 45(f), the Central District of California has agreed to hear Defendants' motion following transfer, and the Parties have agreed to such transfer. If this matter is not transferred, Defendants require and seek relief from this Court.

This motion arises out of seventeen (17) document subpoenas served by Plaintiffs on Defendants' numerous business associates. Declaration of Dilan A. In Support of Motion for Protective Order ("Esper Decl."), Exhibit 1. The subpoenas can be broken into three primary categories: (1) subpoenas to Defendants' limited partners ("LPs") a/k/a their investors; (2) subpoenas to companies in which Defendants invested; and (3) subpoenas to Shima's vendors or potential vendors. The subpoenas ask for broad swaths of written communications between the third parties and Defendants, on any subject matter, during broadly-defined time periods. They are grossly overbroad and improper, and Defendants seek limitations on the scope of discovery by means of a protective order under Fed. R. Civ. Proc. 26(c)(1)(D).

One of those subpoenas, issued to Paul Veradittakit, is directed at a resident of this judicial district. It, like the rest of the subpoenas, is grossly overbroad. Thus, should this matter not be transferred, this Court should enter a protective order limiting the scope of the subpoena.

## II. STATEMENT OF FACTS

The Central District Action arises in the context of a broader dispute and is one of several legal proceedings that arose from the falling out of a business partnership between Adam Struck and Yida Gao. The two worked together between 2015 and 2021. During that time, they set up numerous investment vehicles that can largely be divided into two categories: traditional venture capital investments and cryptocurrency blockchain investments. Declaration of Yida Gao ("Gao Decl."), ¶ 5. The traditional investments were made through various companies, including Struck Fund I, Struck Fund II, and numerous special purpose vehicles ("SPVs"). Gao Decl. ¶ 6. The crypto investments were made through a company called Divergent Digital Currency ("DDC"). *Id*.

When, in 2021, Mr. Struck attempted to push Mr. Gao out of the business and deny his ownership rights in the partnership, Mr. Gao filed a lawsuit in the Los Angeles Superior Court ("LASC"). Esper Decl., Exhibit 2. Mr. Struck counterclaimed and moved to compel arbitration based on the operating agreement for the DDC entities. Esper Decl., Exhibit 3. The LASC partially granted and partially denied the motion, sending just the DDC-related dispute to arbitration and staying the remainder of the LASC action. Esper Decl., Exhibit 4. Mr. Gao then initiated the Arbitration, styled *Gao v. Struck, et al.*, JAMS Ref. No. 1220070962 (the "Arbitration"), and Mr. Struck counterclaimed on behalf of DDC in the Arbitration, asserting claims of trade secret theft, among others. Esper Decl., Exhibits 5 & 6.

After being stymied by the limitations of discovery in the Arbitration, Mr. Struck filed the Central District Action, claiming theft of the same trade secrets, but this time on behalf of his traditional venture capital fund (Struck Capital). Complaint, ¶¶ 45-46 (Central District Action, Dkt. 1). That lawsuit therefore revolves around the Parties' traditional investments, while the Arbitration deals with their crypto blockchain businesses.

After the Parties' fallout, Mr. Gao began his own fund called Shima Capital. Shima focuses on crypto blockchain investments, not traditional investments. Gao Decl., ¶ 9. Shima and DDC are therefore competitors. *Id*. DDC is not a party to the Central District Action, nor can it be, as its claims are being prosecuted in the Arbitration, specifically at Mr. Struck's demand. Despite this, Plaintiffs' 17 subpoenas—issued in the Central District Action—focus entirely on crypto-based investors and investments. Gao Decl. ¶ 7. In other words, Mr. Struck is improperly attempting to use the Central District Action to gain discovery for the Arbitration.

## III. SUMMARY OF THE ARGUMENT

The claimed basis of the subpoenas for the Central District Action appears to be related to Plaintiffs' trade secret misappropriation claims, in which they (incorrectly) allege that when the relationship between Mr. Gao and Mr. Struck fell apart, Mr. Gao supposedly ran off with investor lists which were trade secrets that belonged to Plaintiffs, and then allegedly improperly used the information on those lists to start a competing business (Shima) and obtain investors.

The scope of the alleged trade secrets is limited to those identified in the complaint, *i.e.*, lists of alleged investors and business contacts. Complaint, ¶¶ 45-46, 67-84 (Central District Action, Dkt. 1). For Defendants to have usurped Plaintiffs' trade secrets, Mr. Gao would need to have first discovered the contact from the allegedly purloined list(s) (*i.e.*, the trade secret) and then improperly used the information on the list(s) to Shima's benefit. If Mr. Gao already knew such information, the causation element of the trade secret claim would fail, as it was not the alleged usurpation of the trade secret that caused whatever damages that Plaintiffs claim. *See Top Agent Network, Inc. v. Zillow, Inc.*, 2015 WL 10435931, at *2 (N.D. Cal. Aug. 6, 2015) (conduct must "result" in damages to be actionable under California trade secret law); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 471 (N.D. Cal. 2020) ("defendant's actions" must damage the plaintiff to be

actionable under federal Defend Trade Secrets Act). In other words, if Mr. Gao already knew the information on the list(s), even as a result of his work with Mr. Struck, that would not be a breach of any trade secret. *Agency Solutions.com, LLC v. Trizetto Group*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (plaintiff must prove "the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means").[1]

Similarly, if Mr. Gao developed the relationships well after his break from Mr. Struck, then those acts too can been the basis of any trade secret claim. Finally, even if a theft of trade secret did occur, which it did not, the harm would be to DDC and not to the Plaintiffs in this litigation, and the claim would belong in the Arbitration and not in the Central District Action.

Defendants have no objection to Plaintiffs asking third parties how they came into contact with Mr. Gao — that could potentially be relevant to a trade secrets misappropriation claim. In fact, the Parties have already stipulated to instruct the subpoena recipients to produce this very information, with the Court in the Central District Action having approved the stipulation. (Central District Action, Dkts. 60-61). If the purpose of the subpoena is to seek discovery as to Plaintiffs' trade secret claims in federal court — as Mr. Struck claims — nothing beyond this should be required in the first instance. Mr. Gao and Mr. Struck are now business competitors, and broad discovery of all communications between Mr. Gao and his investors, or other business associates, is completely unjustified. This will not only reveal confidential information, but it also has nothing to do with the trade secrets claims,

---

[1] While Mr. Struck asserts corporate opportunity claims in the Arbitration, he does not make the same assertion in the Central District Action. Thus, if Mr. Struck's justification for the subpoenas is to determine whether Mr. Gao failed to present an opportunity to DDC, that would be within the scope of the Arbitration and Mr. Struck would need to seek that discovery therein.

4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER

because such evidence will not establish whether or not Mr. Gao improperly purloined an investor's name from one of the allegedly misappropriated lists.

To the extent that Plaintiffs have served the subpoenas for a ***different*** purpose — such as to obtain information that Defendants can use in the prosecution of their claims in Arbitration — this is an improper abuse of the discovery process.[2] The Arbitrator has disallowed third party subpoenas in support of Plaintiffs' claims in the Arbitration. *See* Esper Decl., Exhibit 9 ("[T]he Arbitrator does not have statutory power or authority under the DDC Agreements to issue pre-hearing discovery subpoenas to third-parties."); Esper Decl., Exhibit 10 ("With respect to whether the parties would wish to adopt California Civil Code section 1283.05 (permitting third party subpoenas), Respondents report that they would wish to do so while Claimant does not."). In the face of these rulings, Plaintiffs are not entitled to issue third-party subpoenas in the Arbitration. *Aixtron, Inc. v. Veeco Instruments Inc.*, 52 Cal. App. 5th 360 (2020); *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703 (9th Cir. 2017). To be clear, Mr. Gao denies all of Plaintiffs' claims, but the only proper venue for them is the Arbitration, and Plaintiffs cannot use the Central District Action as a vehicle to obtain discovery for the Arbitration.

This Court has broad power to enter protective orders limiting the scope of discovery. Fed. R. Civ. Proc. 26(c)(1). Such relief is warranted in this case. Specifically, Defendants seek to limit the scope of Plaintiffs' subpoena to the subject area of how Paul Veradittakit came to do business with Mr. Gao. There is good cause to grant this relief, because Plaintiffs have now served over 17 third-party subpoenas, and will likely serve even more. The subpoenas broadly ask for all communications

---

[2] As just one example, Plaintiffs have simultaneously sought discovery related to LunarCrush and BitClout in the Arbitration and have served third party subpoenas on the same entities in the Central District Action. Esper Decl., Exhibit 7.

between the third parties and Mr. Gao/Shima (including multiple Shima entities that are not parties to this litigation). Such broad requests are not only irrelevant, but also seek extensive confidential information regarding Mr. Gao's businesses, which are in direct competition with Mr. Struck's businesses, and which have nothing to do with Plaintiffs' trade secret claims.[3] There is also good cause to enforce limits on discovery because Plaintiffs are not entitled to use discovery to obtain information for their corporate opportunity claims, which are being (and must only be) asserted in the pending Arbitration.

Plaintiffs have argued that the counterclaims filed by Defendants in the Central District Action somehow broaden the scope of permissible discovery to include these subpoenas. That is incorrect. Mr. Struck's lawsuit focuses on actions allegedly taken by Mr. Gao after February 2021 while Mr. Gao's counterclaims focus on the parties' initial partnership from 2015 to February 2021. All of these subpoenas, including the subpoena to Paul Veradittakit, relate to Defendants' current activities in the cryptocurrency space after the breakup of the relationship between Mr. Struck and Mr. Gao. Defendants' counterclaims focus entirely on establishing that prior relationship and Mr. Struck's wrongful actions during that relationship and have nothing to do with their currently competing cryptocurrency businesses.

## IV.   ARGUMENT

### A. Legal Standard for Protective Order

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The Court is vested with broad

---

[3] Notably, in addition to Defendants' objections and this motion, Paul Veradittakit has served his own written objections to Plaintiffs' subpoena. Esper Decl. Exhibit 8.

discretion to permit or deny discovery." *Hicks v. Dotson*, 2013 WL 3208575, at *1 (E.D. Wash. June 24, 2013). The standard for a protective order is a showing of "good cause." Fed. R. Civ. Proc. 26(c)(1). "The party seeking to restrict discovery bears the burden of demonstrating the necessity for such an order. Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury. Courts are ever mindful that the scope of the discovery should be proportionate to the claims in the case." *Martino v. Nationstar Mortgage LLC*, 2019 WL 2931639, at *1 (D. Conn. July 8, 2019).

In determining whether to limit the scope of discovery, the Court may consider the potential relevance of the evidence being sought. *See McCoy v. Ramirez*, 2017 WL 11414694, at *2 (E.D. Cal. Jan. 17, 2017). The Court may also consider the extent to which discovery attempts to embarrass or harm Defendants. *Novedea Systems, Inc. v. Colaberry, Inc.*, 2021 WL 3054684, at *3 (E.D. Tex. July 7, 2021). The Court may also enter a scope-of-discovery protective order to cabin overbroad discovery. *Martinet v. Spherion Atlantic Enterprises*, 2008 WL 2557490, at *2 (S.D. Cal. June 23, 2008).

### B. Relief Sought

Defendants seek an order limiting the subpoena to only documents relating to how Paul Veradittakit came to do business with Mr. Gao without prejudice to Plaintiffs' right to seek additional discovery from a third party if an actual trade secret violation were to be discovered. Because the Parties have already stipulated to the production of these documents (with the Central District of California Court's approval), Defendants seek to limit production to just the documents encompassed by that stipulation.

## V. THE MOTION SHOULD BE GRANTED

### A. Requests Contained In Subpoena

Request No. 1: ALL DOCUMENTS, including COMMUNICATIONS, RELATING TO YOUR membership in Shima Capital GP LLC.

Request No. 2: ALL DOCUMENTS, including COMMUNICATIONS, RELATING TO the withdrawal of YOUR membership in Shima Capital GP LLC.

Request No. 3: ALL COMMUNICATIONS with GAO RELATING TO SHIMA.

Request No. 4: ALL COMMUNICATIONS with GAO RELATING TO SAND HILL.

Request No. 5: ALL COMMUNICATIONS with GAO RELATING TO STRUCK.

Request No. 6: ALL COMMUNICATIONS with SHIMA.

Request No. 7: ALL COMMUNICATIONS with SAND HILL.

Request No. 8: ALL DOCUMENTS, including COMMUNICATIONS, RELATING TO STRUCK.

### B. Reasons Motion Should Be Granted

Mr. Veradittakit is a former investor in Shima Capital GP (the General Partner overseeing the Shima Capital fund and which has been dismissed from this case). Gao Decl., ¶ 16. This investment was, of course, a cryptocurrency investment and thus, any claims arising out of this investment would be within the scope of the arbitration. Both Mr. Gao and Mr. Struck have known Mr. Veradittakit for years, long before the alleged theft of any trade secrets. Gao Decl., ¶ 16. Mr. Struck is aware of all of this because Mr. Veradittakit previously submitted a declaration in the Central District Action stating that he was a member of Shima Capital GP. Gao Decl., Exhibit 1. Immediately after receiving the declaration, Mr. Struck threatened to subpoena Mr. Veradittakit, threatened to include him in this lawsuit, and threatened

to subpoena his co-workers. Gao Decl., Exhibit 2. Mr. Veradittakit responded by withdrawing his investment and membership in Shima Capital GP. Gao Decl., ¶ 19. This subpoena appears to be nothing more than Plaintiffs' further harassment and Mr. Struck carrying out these threats. This subpoena should be limited to documents related to the formation of Mr. Veradittakit's relationship with Defendants, which would be sufficient to show that the relationship did not result from any usurpation of any trade secret.

## VI. CONCLUSION

For these reasons, Defendants' Motion for Protective Order should be granted.

DATED: February 14, 2023        HARDER LLP

By: */s/ Ryan J. Stonerock*
    RYAN J. STONEROCK
Attorneys for Defendant and Counterclaimant Yida Gao and Defendants Sand Hill Advisors PR LLC and Shima Capital Management LLC